GRIFFIS, P.J.,
for the Court:
¶ 1. This is an appeal of a school-board decision that revoked the transfer of Courtney Fails. Mark and Laura Fails assert three issues on appeal. First, the conservator does not have the authority to prevent the district’s school board from voting on a matter. Second, the school board may not lawfully revoke a student’s inter-district transfer after it previously approved the transfer. Third, the school board may not adopt a blanket policy against inter-district transfers. We find no error and affirm.
FACTS
¶ 2. Mark and Laura are the parents of Courtney. They reside in the Jefferson Davis County Public School District (“the District”). In 2003, Mark and Laura requested and obtained a transfer for Courtney to attend school in Sumrall, Mississippi, located in the Lamar County Public School District. This transfer allowed Courtney to attend the school in Sumrall even though she did not reside within that district.
113. In May 2007, the Governor declared a state of emergency in the District. Thereafter, the State Board of Education appointed Glenn Swan to the position of interim conservator for the District.
¶ 4. On August 13, 2007, the Jefferson Davis County Public School Board (“the Board”) adopted a “New Student Transfer Policy”:
It shall be the policy of the [the District] that all students who live in said district must attend school in the Prentiss School District or the Bassfield School District. No student shall be allowed to ... attend another school in a different district when the parents or legal guardian reside at a legal residence] in [the District],
¶ 5. In the summer of 2008, notice was published in a local newspaper that informed all parents within the District of the new transfer policy. The notice stated that all prior transfers were revoked and that no transfers would be allowed in the future. The effect of this policy was that Courtney would have to leave the Sumrall school and return to the District’s schools.
¶ 6. On October 13, 2008, Mark appeared before the Board at its regularly scheduled meeting. He argued to the Board that the intent of the new policy was not to revoke existing transfers but merely to prohibit future transfers. He asked the Board to *3 clarify the meaning of the new policy. Swan invoked his authority as conservator and refused to allow the Board to vote on the matter. Swan decided that the policy did in fact revoke existing transfers.
¶ 7. Mark and Laura appealed this decision to the Circuit Court of Jefferson Davis County, which affirmed Swan’s decision and upheld the revocation of Courtney’s transfer. Their appeal has now been deflected to this Court for review.
STANDARD OF REVIEW
¶ 8. An appeal from an administrative agency is limited. Mainstream Sav. & Loan Ass’n v. Washington Fed. Sav. & Loan Ass’n, 325 So.2d 902, 903 (Miss.1976). In the review of a decision of an administrative agency, we will determine whether the order of the administrative agency: “(1) was unsupported by substantial evidence!,] (2) was arbitrary and capricious!,] (3) was beyond the power of the administrative agency to make[,] or (4) violated some statutory or constitutional right of the complaining party.” Id. However, in ABC Manufacturing Corp. v. Doyle, 749 So.2d 43, 45 (¶ 10) (Miss.1999), the Mississippi Supreme Court held, “[gjenerally, an administrative agency is accorded deference, but when the agency has misapprehended a controlling legal principle, no deference is due, and our review is de novo.”
ANALYSIS

1. Did the conservator have the authority to prevent the Board from a vote on the issue?

¶ 9. The first argument on appeal is that Swan did not have the authority to prevent the Board from voting to clarify the meaning of the “New Student Transfer Policy.”
¶ 10. Swan’s authority as the conservator was broad. The conservator, in essence, becomes the Board. Mississippi Code Annotated section 37-17-6(14)(a) (Supp.2010) provides:
Whenever the Governor declares a state of emergency in a school district in response to a request made under subsection (11) of this section, the State Board of Education, in its discretion, may assign an interim conservator to the school district, ... who will be responsible for the administration, management and operation of the school district, including, but not limited to, the following activities:
(i) Approving or disapproving all financial obligations of the district, including, but not limited to, the employment, termination, nonrenewal and reassignment of all licensed and nonlicensed personnel, contractual agreements and purchase orders, and approving or disapproving all claim dockets and the issuance of checks; in approving or disapproving employment contracts of superintendents, assistant superintendents or principals, the interim conservator shall not be required to comply with the time limitations prescribed in Sections 37-9-15 and 37-9-105;
(ii) Supervising the day-to-day activities of the district’s staff, including reassigning the duties and responsibilities of personnel in a manner which, in the determination of the conservator, will best suit the needs of the district;
(iii) Reviewing the district’s total financial obligations and operations and making recommendations to the district for cost savings, including, but not limited to, reassigning the duties and responsibilities of staff;
*4 (iv) Attending all meetings of the district’s school board and administrative staff;
(v) Approving or disapproving all athletic, band and other extracurricular activities and any matters related to those activities;
(vi) Maintaining a detailed account of recommendations made to the district and actions taken in response to those recommendations;
(vii) Reporting periodically to the State Board of Education on the progress or lack of progress being made in the district to improve the district’s impairments during the state of emergency; and
(viii) Appointing a parent advisory committee, comprised of parents of students in the school district that may make recommendations to the conservator concerning the administration, management and operation of the school district.
(Emphasis added).
¶ 11. Mark and Laura correctly point out that the statute does not specifically provide Swan with the power to prevent the Board from voting to clarify the toans-fer policy. Nevertheless, the statute expressly grants the conservator authority over “the administration, management and operation of the school district.” Id. The statute also indicates that the specific powers granted under the statute are not exhaustive.
¶ 12. Because Mississippi case law is silent on this issue, this Court must look to the plain language of the statute and give the words “their common and ordinary acceptation and meaning[.]” Miss.Code Ann. § 1-3-65 (Rev.2005). The statute uses capacious language to describe the role of the conservator. Control over “administration, management and operation” is commonly understood to mean a very high degree of authority. Based on the statute’s plain language and the general powers conveyed by this language, we must conclude that Swan operated within his statutory powers when he refused to allow the Board to vote on a matter dealing with the “administration, management and operation” of the District. Accordingly, we find that this issue is without merit.

2. Did the Board have the authority to revoke an existing transfer?

¶ 13. Mark and Laura next argue that the Board did not have the authority to revoke Courtney’s transfer. They contend that once an inter-district transfer has been approved it is permanent and irrevocable.
¶ 14. Mississippi Code Annotated section 37-15-29(1) (Supp.2010) provides:
[N]o minor child may enroll in or attend any school except in the school district of his residence, unless such child be lawfully transferred from the school district of his residence to a school in another school district in accord with the statutes of this state now in effect or which may be hereafter enacted.
Inter-district transfers are governed by Mississippi Code Annotated section 37-15-31 (Rev.2007), which provides:
(l)(a) ... [Individual students living in one school district ... may be legally transferred to another school district, by the mutual consent of the school boards of all school districts concerned[.]
Thus, both the transferor and the transferee school boards must consent to the transfer. The statute further provides that if both school boards approve the transfer “such decision shall be final.” Miss.Code Ann. § 37-15-31(l)(b). And if *5 either school board rejects the transfer that decision is also “final.” Id.[1]
¶ 15. Mark and Laura claim that when their initial transfer request was approved, in 2003, that decision became final, in the sense that it was effective in perpetuity and could not be revoked. In contrast, the Board argues that, since the statute requires it to consent to the transfer, it could have withdrawn its consent at any time and thereby revoked Courtney’s transfer.
¶ 16. Neither party cites any legal authority directly on point. We are convinced, after reviewing prior versions of the statute, that “final” does not mean that the transfer could never be revoked.
1117. Under section 6248-07 of the Mississippi Code of 1942, an inter-district transfer required the consent of the boards of trustees and the county boards of education of both the transferor and transferee school districts. If either board of trustees denied the transfer, the board of trustees’ decision could be appealed to the county board of education. Id. The statute also provided for appeals to the State Educational Finance Commission. Id.
¶ 18. The statute underwent several revisions. By 1987, the statute, as it does today, required the consent of the school boards of both the transferor and transferee school districts. 1987 Miss. Laws ch. 307, § 16. The statute provided that if either school board denied the transfer, an appeal could be taken to the State Board of Education. Id.
¶ 19. In 1988, the Legislature passed “An Act to Amend Section 37-15-31, Mississippi Code of 1972, to Delete the Provision for an Appeal to The State Department Of Education from Decisions of Local School Boards Regarding Transfer Students.” 1988 Miss. Laws ch. 466, § 1. The statute was revised to state that if either school board denied the transfer, that decision would be “final.” Id. By 1991, the statute also provided that if both school boards approved the transfer, that decision would be “final.” 1991 Miss. Laws ch. 349, § 2. Those provisions of the statute have remained substantially unchanged up to the present day.
¶ 20. In this context, we conclude that the word “final” simply means that there is no administrative appeal to the State Department of Education. While older versions of the statute allowed for various administrative appeals, the current version does not. We find no authority that supports a conclusion that “final” means the transfer is permanent and irrevocable.
¶ 21. We now turn to the question of whether the Board could withdraw its consent to the transfer. Again, there is no legal authority directly on point. Likewise, there is no statutory language to suggest that once consent has been given for a transfer it cannot be -withdrawn. The Mississippi Supreme Court has noted that student “assignments are not perpetual.” Hinze v. Winston County Bd. of Educ., 233 Miss. 867, 875, 103 So.2d 353, 357 (1958).
¶ 22. Swan sought and obtained an Attorney General opinion. The Attorney General’s opinion stated:
Attorney General Jim Hood is in receipt of your opinion request as the Conservator for the Jefferson Davis County School District and has assigned it to me for research and reply.
Issue
Whether the release of a student pursuant to Section 37-15-31 of the Mississip *6 pi Code to attend school in a district other than in the district in which he/she resides is permanent at the time of the release or is the student required to request the release on an annual basis?
Response
The release of the student to attend school in another school district is not permanent. The transfer is effective until either party revokes its consent.
Background
Clarification is needed on the release of a student to attend a school in another district other than in the district he/she resides. The school district has had a number of students released in past years; however, the district has a “no release” policy at the present time.
Applicable Law and Discussion
Section 37 — 15—31(l)(a) of the Mississippi Code provides that upon the petition in writing of a parent or guardian resident of the school district of an individual student filed or lodged with the president or secretary of the school board of a school district in which the pupil has been enrolled or is qualified to be enrolled as a student, individual students living in one school district may be legally transferred to another school district, by the mutual consent of the school boards of all school districts concerned, which consent must be given in writing and spread upon the minutes of such boards.
This office has previously opined on the duration of a transfer of a student. As there is no specific time limitation set forth in Section 37-15-31, the transfer of a student is effective until the school board of either school district, or the county board of education if applicable, revokes its consent. MS AG Op., Swanson (February 16, 2001). However, it is important to note that in the absence of express statutory authority, a school board cannot enter into a transfer contract with another school board for a period of time that would deprive a subsequent board of its rights and powers. Any such contract would be voidable at the election of the subsequent board. MS AG Op., Swanson (February 16, 2001), quoting Humble Oil & Refining Co., et al v. State et al., 206 Miss. 847, 41 So.2d 26 (1949). See also MS AG Op., Boleware (September 10, 2008).
Conclusion
We are of the opinion that the transfer of a student to another school district pursuant to Section 37-15-31 of the Mississippi Code can be revoked by the school board of either school district. Additionally, a school board cannot enter into a transfer contract that would deprive a subsequent board of its rights and powers.
Miss. Att’y Gen. Op., 2008-00524, 2008 WL 4825783, Swan (Oct. 3, 2008).
¶ 23. We agree with the Attorney General’s opinion. Therefore, we hold that a school board may withdraw its consent to an inter-district transfer and thereby revoke the transfer. Accordingly, this issue is without merit.

3. Could the Board adopt a blanket policy against transfers?

¶ 24. Mark and Laura also attack the “New Student Transfer Policy.” They argue that the Board could not adopt a blanket policy against inter-district transfers. They argue that individual transfer requests must be considered on a case-by-case basis and that, when making their decisions, school boards must consider certain factors enumerated in Mississippi Code Annotated section 37-15-15 (Rev. 2007).
¶ 25. However, section 37-15-15 requires school boards to consider certain *7 factors when assigning students to a particular school or attendance center within a district. It does not apply to inter-district transfers. Hinze, 233 Miss. at 874, 103 So.2d at 356.
¶ 26. Section 37-15-31 grants school districts absolute discretion to grant or deny inter-district transfers, with some exceptions that are not applicable to this case. It follows that districts may adopt uniform policies against transfers. It would be a difference in form only if a district denied each individual transfer request, as opposed to announcing preemptively that there will be no transfers. This issue has no merit.
¶ 27. THE JUDGMENT OF THE JEFFERSON DAVIS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
LEE, C.J, IRVING, P.J., MYERS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J. RUSSELL, J., NOT PARTICIPATING.

. The statute also allows for inter-district transfers in a few other limited situations that are not applicable to this case. See Miss.Code Ann. § 37-15-31(2)-(5).